Filed 3/2/21  P. v. Stimson CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>NIGEL MARQUEE STIMPSON,<br><br>        Defendant and Appellant. | B305716<br><br>(Los Angeles County<br>Super. Ct. Nos. MA071367<br>& MA072453) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Shannon Knight, Judge.  Affirmed.

        Christopher J. Bou Saeed, under appointment by the Court of Appeal, for Defendant and Appellant.

        No appearance for Plaintiff and Respondent.

————————————

Pursuant to *People v. Wende* (1979) 25 Cal.3d 436, we review this appeal following orders revoking probation. We affirm.

In November 2017, Nigel Marquee Stimpson entered into a plea deal that encompassed five matters: two felonies and three misdemeanors. Our record contains little about the misdemeanors. We know one of them was a domestic violence case that generated a protective order against Stimpson.

The two felony matters are Case No. MA071367 and Case No. MA072453.

Case No. MA071367 involves a single count for forgery of a prescription.

Case No. MA072453 involves a single count for second degree robbery. At the preliminary hearing, a security guard employed by a grocery store testified Stimpson put a bottle of alcohol into his backpack, left the store without paying for it, and ran away when confronted.

Stimpson pleaded no contest to both felonies.

The trial court sentenced Stimpson to the upper term of five years in state prison for Case No. MA072453 and a concurrent midterm of two years in county jail for Case No. MA071367. The court then suspended execution of both sentences, put Stimpson on probation for five years, and imposed various conditions on his probation. Stimpson had agreed to probation conditions in MA072453 that related to his misdemeanor matters in exchange for termination of these matters, and the court accepted the parties' agreement.

One of these conditions required Stimpson to obey a protective order to stay away from a woman identified in our record as Stimpson's wife, Renetta Walters. The court later

modified this protective order to allow peaceful contact with Walters.

In September 2019, Stimpson was arrested in Kern County for suspected spousal abuse and for violating the protective order.

Four witnesses testified over the course of three probation violation hearings:  Walters, the two officers who arrested Stimpson at Walters's home, and Stimpson.

Walters testified first.  She had taken Stimpson's last name but did not live with him.  She testified she called the police on the day in question because, "I just wanted him [Stimpson] out of my house, and that's all."  She claimed that *after* calling police she found another woman's lingerie in her laundry and confronted Stimpson.  She was upset and decided to pack her car and leave.

As Walters loaded her car, Stimpson tried to pack his clothes too.  Walters tried to stop him by swinging at him and hitting him.  Stimpson was blocking her with his forearms, and then, "I guess somewhere on his forearm came up under my face and I fell down."  Walters lost consciousness.  She attributed this to a brain shunt.

Walters believed Stimpson was high at the time.  She denied he hit her and denied she told police this.  Walters also maintained she did not cry when speaking with the police.

Deputy Shannon Biehl testified next.  She interviewed Walters at her home that day.  Walters started crying when Biehl asked her what happened.  Walters then told Biehl the following: Stimpson hit her mouth and knocked her to the ground.  She lost consciousness.  She had pushed Stimpson out of the way so she could leave without him.  Stimpson had hit her before and had been arrested for it.  She did not want him to go to jail.

Biehl got a good look at Stimpson. She did not observe any injuries or blood on him at first. But later, when Stimpson was in her police car, she noticed blood around his nose. Before this, Stimpson was in the backseat of her partner's police car; Stimpson was screaming, and Biehl's partner believed he was banging his head against the protective glass.

Deputy Jose Grande, Biehl's partner, testified that when he got to the scene Stimpson tried to describe what happened but made no sense. When Grande asked whether he assaulted Walters, Stimpson asked for a lawyer and stopped talking to him. Walters told him Stimpson hit her in the face or head. Grande observed injuries to Walters's head, and grass on her hair and face. Stimpson did not appear to be injured, however. Grande saw no sign of a bloody nose or scars on him. Grande never saw Stimpson hit himself in the face in the police car.

Stimpson testified twice. He said he and Walters were packing for a trip, and then Walters got upset after his mistress called him. Walters called the police and reported he hit her; then she began punching him and throwing things at his head.

They continued packing their things in the car, and Walters continued "yelling, cussing, fighting, punching me, kicking." She "busted" his nose, hit him in the lip, and rammed him with her car door. While he was defending himself, Walters "just fell"—Stimpson did not know what happened. Then she got up; there was nothing wrong with her. He, on the other hand, had a bloody nose and two scars on his head from her fit. He denied hitting his head against the police car.

Stimpson also denied hitting Walters. He claimed she was the aggressor, he never touched her, and he did nothing to make her fall. He would never hit her, as he "love[s] her with all [his]

4

heart." But she always gets physical with him when she is upset with him.

At some point, Stimpson began recording Walters with his cell phone, and the defense introduced this recording at the hearing. The recording does not match Stimpson's or Walters's account of events, and it is unclear what is happening at some points.

Stimpson tried to show Walters was not credible. He claimed she is a "drama queen" who falsely accuses him when she wants him out of the house. He testified she had threatened to put him in jail if he kept " 'talking to the females.' " Stimpson's lawyer also introduced a text message in which Walters admits she lied to Stimpson's probation officer about something.

The trial court found there was sufficient evidence Stimpson violated the conditions of his probation by striking Walters and disturbing her peace. The court noted this was not Stimpson's first probation violation. It terminated Stimpson's probation and re-imposed the previously suspended five-year prison sentence in MA072453 and the concurrent two-year sentence in MA071367.

Stimpson appealed, and we appointed counsel to represent him. Appointed counsel examined the record and filed an opening brief raising no issues and asking this court to review the record independently under *People v. Wende*. Counsel also advised Stimpson he had 30 days to file a supplemental brief for us to consider. Stimpson did not file a response.

We have examined the entire record. We are satisfied Stimpson's counsel fully complied with his responsibilities and no arguable issues exist. (See *People v. Wende* (1979) 25 Cal.3d 436, 441.)

## DISPOSITION

The judgment is affirmed.


                                        WILEY, J.


We Concur:



BIGELOW, P. J.



GRIMES, J.